OPINION OF THE COURT
Nicholas Colabella, J.
In an action for declaratory judgment, defendants move for *833 summary judgment dismissing the complaint and for discovery sanctions. Plaintiffs cross-move for summary judgment for declaratory and injunctive relief. Motion and cross motion are granted to the extent the court declares that plaintiffs have the right to convey their interest in the real property subject to the existing life estate, but that plaintiffs do not have a right of entry into the life estate area. Motion and cross motion are otherwise denied.[1]
Plaintiffs are the owners of real property conveyed by deed from defendants dated January 5, 1984. The property consists of approximately 110 acres, now primarily used as an equestrian center. Defendants reserved a life estate in a portion of the property consisting of approximately five acres in which defendants continue to reside in the property’s main residence. Plaintiffs now seek access to the reserved life estate area by real estate agents and brokers, and prospective purchasers for the purpose of marketing the entire parcel. Defendants oppose access. In issue is a question of apparent first impression: whether a life tenant may exclude a remainderman from showing the life estate area to such persons. The instant action seeks a declaration that plaintiffs have the right to sell the property and to enter the life estate area for the purpose of showing the property, and a permanent injunction against defendants from interfering with such access.
While plaintiffs have the right to convey whatever interests they hold in the premises even though the date of full possession and enjoyment is not due (Lewisohn v Henry, 179 NY 352; Matter of Weaver, 253 App Div 24, affd 278 NY 605; see generally, 1 Rasch, New York Law and Practice of Real Property § 8:6, at 130 [2d ed]), the life tenant is the exclusive owner of the land during the lifetime of the life tenant subject only to certain well-defined limitations or duties even to the exclusion of a reversioner or remainderman (1 Rasch, op. cit., § 6:13, at 71). Restatement of Property § 117 states: "The owner of a possessory estate for life has the same right that his possession be not disturbed as he would if he were the owner of a possessory estate in fee simple absolute in the same land, except to the extent that the owner of a future interest in the same land has a privilege to interfere with such possession for the perfection, assertion or protection of the rights, powers or privileges of the owner of such future interest.”
*834 According to the Restatement, the right of the owner of a possessory estate for life, that his possession be not disturbed, is subordinate only to the reasonable protection of the future interest or interests subsequent to such estate for life (Restatement of Property § 117, comment c; see also, 1 Rasch, op. cit., § 6.14). The Restatement recognizes at least five sets of circumstances in which owners of future interests are privileged to enter upon the land during the continuance of the estate for life: (1) the privilege to inspect the premises for waste; (2) the privilege to demand payment of rent due; (3) the privilege reasonably to enter for the purpose of making such repairs upon the premises as may be necessary to protect the future interests from damage; (4) the privilege to enter for the purpose of removing timber or other materials which have been severed from the land under such circumstances that the entering owner of a future interest is entitled to the possession thereof; (5) when the estate in possession and estate of the owner of a future interest in the same land are both subject to a covenant, or when the estate of the owner of the future interest in land is a defeasible estate capable of having its ending caused or accelerated by conduct on the land, then the owner of such future interest is privileged reasonably to enter in order to perform such acts as are necessary to protect himself from the effects of a breach of such covenant or from the causing or the acceleration of the termination of his defeasible estate. Comment d of section 117 of the Restatement adds that "[i]n cases not included within the exception stated in this Section, the right of an owner of a possessory estate for life that his possession be not disturbed operates equally against persons not having future interests in the affected land and persons having such interests” (see also, 1 American Law of Property § 2.16; Simes and Smith, Law of Future Interests § 1654).[2]
It is undisputed that none of the foregoing circumstances apply in this case. Plaintiffs further concede that neither the contract of sale nor the deed expressly provides a right of entry onto the life estate. Plaintiffs argue, however, that a right of entry is implicit, as a matter of law, in the deed as a necessary incident to the right to convey plaintiffs’ future interest in the life estate and present interest in the surrounding property. Plaintiffs contend such a right is consistent both logically and with the historical exceptions in Restatement of Property § 117.
*835 The court disagrees. It does not follow that, because one has a right to convey what he or she owns, one has a right to invade another’s interest. Similarly, the mere fact that a right of entry would be beneficial in conveying an interest in property does not mean that such a right is necessary to either the perfection or assertion of the right to convey particularly or the reasonable protection of plaintiffs’ future interest generally so as to justify subordinating the right of the owner of a possessory estate for life not to be disturbed.
Plaintiffs have also failed to demonstrate that they are unable to convey the subject property without access to the life estate area. There has been no showing that the property, as a whole, cannot be conveyed for a lesser price or that the part of the property that is not subject to the life estate cannot be sold separate from the reserved life estate area.[3]
Although plaintiffs’ counsel contends that they are unable to sell the property, counsel elsewhere tacitly concedes that the only harm is a diminution in the value of the property in arguing that the lack of access "is preventing effective marketing of the entire property for sale” (mem, at 8 [emphasis added]). Similarly, the affidavit of real estate agent Donald Russell dated January 24, 1995 (at 6), states that lack of access has "prevented us from effectively marketing the property” (emphasis added), while the affidavit of real estate agent Anthony Cutugno dated April 28, 1994 (at 2), states that, without access, he "cannot be optimistic about the future sale of the Thorn property at its fair market value.” The possibility that property will be less valuable to the owner of a future interest if access is denied to perform an act during the life estate, however, has been rejected by the Restatement of Property as a basis for allowing entry in its illustration 4 of comment d of section 117: "A, owning Blackacre in fee simple absolute, transfers Blackacre 'to B for life, remainder to C and his heirs.’ The proper long time utilization of Blackacre requires the construction thereon of a commercial office building. The cost of such construction is likely to be much greater when B dies than it is at present. C desires to enter on Black-acre and construct the building forthwith at his own expense. B has an unqualified right that C not disturb his possession in this manner.”
*836 The fact that plaintiffs may be unable to maximize the return on the property, if they are unable to show the life estate area to prospective buyers and to market the property for sale as a whole, is an unfortunate consequence, but it is an eventuality that was clearly foreseeable by plaintiffs. Although plaintiffs may not have intended to sell the property before the end of the life estate, the possible need to do so should have been apparent to plaintiffs. It is uncontroverted that plaintiffs are sophisticated real estate investors who were represented at the time of sale by sophisticated real estate counsel.
Plaintiffs’ plight is also to a large extent self-created. Defendants have maintained, in conferences with the court as well as in motion papers, that they would permit access by prospective purchasers provided that plaintiff Laura Thorn, the president and principal of plaintiff Laura Thorn, Ltd., assumed personal responsibility for conducting such persons through their home. Plaintiffs rejected that offer.[4]
The policy issue at bar is whether, having failed to negotiate a right of access at the time of sale, plaintiffs should be relieved of the consequences of that failure. The view of the undersigned is that plaintiffs’ situation is no different than that of any party who fails to provide in their contract for a possible eventuality. The circumstances at bar are analogous to where a landlord seeks access to premises that are leased. "[A]s a general rule, a landlord has no right to enter upon leased premises without the tenant’s consent, unless the landlord has reserved such a right in the lease thereto” (2 Rasch, New York Landlord and Tenant § 28:3, at 336 [3d ed]; see also, First Stamford Natl. Bank & Trust Co. v Pierce, 161 Misc 756).
Judicial intervention is particularly unwarranted in this case since the right plaintiffs seek is in derogation of defendants’ contracted for right to occupancy and enjoyment of the life estate area.[5] Had sale been conditioned on a right of access by prospective purchasers, the sale might never have been consummated or the sale might have been consummated on different terms. Recognition of a right of access would, in ef *837 feet, amount to reformation of the contract between the parties.[6]
Finally, the right of access plaintiffs seek is far more extensive than the few exceptions recognized historically in the Restatement of Property § 117. The right in issue is not merely a right of access by plaintiffs, it is a right of access by independent real estate agents and brokers and by a class of persons loosely defined only as prospective purchasers, the number of persons who would be allowed access is unlimited and the period of time over which plaintiffs seek access is indefinite. Once recognized, the right of access would pass to any ultimate purchaser who might similarly seek to market the property.[7] The right plaintiffs seek to have recognized by the court, therefore, potentially poses a substantial and invasive intrusion into the privacy rights of defendants for the duration of the life estate.[8]

. Injunctive relief is not necessary with respect to the declaration of plaintiffs’ right to convey title since that right is uncontroverted by defendants and does not involve any act on the part of defendants.

. The Restatement of Law is not binding. In the absence of legal precedent, however, the courts may look for guidance to such sources as the Restatements of Law (American Record Pressing Co. v United States Fid. & Guar. Co., 466 F Supp 1373, 1379 [SD NY 1979]).

. The most that plaintiffs offer on this point is counsel’s colorful assertion that the “Life Estate and the Main residence are the crown jewel in the center of the brooch and it is unreasonable to expect someone to purchase the brooch without being afforded the opportunity to admire the prized stone first hand” (mem, at 14).

. According to defendants, that option remains open. Plaintiffs also have the option of negotiating an agreement for access on other terms for additional compensation.

. Plaintiffs do not dispute that the purchase price was reduced by $500,000 in return for defendants’ reservation of a life estate.

. A party asserting an implied in fact covenant bears a heavy burden as it is not the function of the courts to remake contracts (see, Rowe v Great Atl. & Pac. Tea Co., 46 NY2d 62; Foreign Trade Dev. Co. v Metropolitan Transp. Auth., 119 AD2d 725, 726). Plaintiffs have not pleaded, let alone shown, any basis to imply a right of access in the contract of sale. The general merger provision in the contract in this case bars reliance on statements other than set forth in the contract and the terms of the contract that were to survive the closing are specifically recited.

. A variety of rights of owners of future interests have been codified (see, e.g., RPAPL art 8 ["Waste And Other Actions And Rights Of Action For Injury To Real Property”]; art 12 ["Other Actions And Proceedings Between Co-Owners Or Owners Of Successive Interests”]). Especially given the lack of historical precedent and the invasion of the life tenants’ rights of privacy, the more appropriate authority for recognition of an additional right of access in the circumstances at bar is the Legislature.

. Previously, by order dated Mar. 31, 1994, the court granted a motion for preliminary injunctive relief permitting limited access. That order was an effort at a pragmatic solution to what appeared to be a short-term problem. In initial conferences with the court on the motion, plaintiffs’ counsel represented that there was a serious prospective purchaser prepared to make an offer to purchase the property subject to viewing the life estate area. The court, upon reargument, vacated the order when, over the course of several months in which the matter pended for settlement discussions, it became apparent that plaintiffs were not close to a sale and that plaintiffs wished to open the defendants’ home to a number of persons for an indefinite period to market the property.