[991 NYS2d 431]

In the Matter of DIANNE EDWARDS, Deceased. DONNA LARSEN, Respondent; DONNA DiRusso, Appellant, et al., Petitioner.

Second Department, August 20, 2014

**APPEARANCES OF COUNSEL**

*Jaspan Schlesinger LLP*, Garden City (*Mindy K. Smolevitz* and *Sally M. Donahue* of counsel), for appellant.

*Haley Weinblatt & Calcagni, LLP*, Islandia (*Richard D. Haley* of counsel), for respondent.

## OPINION OF THE COURT

HALL, J.

It is a well-established equitable principle that a wrongdoer should not benefit from his or her own wrongdoing. On this appeal, this Court is presented with the question of whether a person who unlawfully kills another should be permitted to inherit the victim's assets indirectly through the estate of the victim's daughter. Under the particular facts of this case, where there is a clear causal link between the wrongful conduct and the benefits sought, we answer that question in the negative.

### Factual and Procedural Background

Deanna Edwards Palladino and Brandon Palladino were high school sweethearts who married in 2007. On December 17, 2008, Brandon killed his mother-in-law, Dianne Edwards (hereinafter the decedent), by strangling her to death. The decedent's will bequeathed her entire estate to Deanna, her only child. In October 2009, Brandon was indicted for the crime of murder in the second degree for causing the death of the decedent. Deanna, who was not criminally charged in connection with the decedent's death, stood by Brandon and believed in his innocence. In February 2010, approximately 14 months after her mother's death, Deanna died intestate of an accidental drug overdose. Although the decedent's will had been admitted to probate in October 2009, none of the decedent's estate had been distributed to Deanna prior to Deanna's death. Deanna was survived by one distributee, Brandon. Brandon designated his mother, Donna DiRusso, as the administrator of Deanna's estate. According to DiRusso's petition for letters of administration, Deanna's estate consisted only of funds received as the beneficiary of the decedent's retirement plan and the expected inheritance from the decedent.

On October 12, 2010, approximately 10 months after Deanna's death, Brandon pleaded guilty to manslaughter in the first

degree, in connection with the death of the decedent. During the plea proceeding, Brandon admitted to entering the decedent's home on December 17, 2008, for the purpose of taking her jewelry. While Brandon was in the decedent's bedroom taking jewelry from her jewelry box, the decedent returned home and the two got into a physical fight. Brandon placed the decedent in a choke hold and squeezed as the decedent was resisting and scratching him. Brandon admitted that he intended to cause the decedent serious physical injury, but asserted that he did not intend to kill her. Brandon agreed to waive his right to appeal at the plea proceeding. However, Brandon subsequently moved for leave to file a late notice of appeal from the judgment of conviction, and his motion was granted by this Court by decision and order dated April 4, 2012 (*People v Palladino*, 2012 NY Slip Op 69334[U] [2012]).

The initial executor of the decedent's will commenced this proceeding for judicial settlement of the account of the decedent's estate. The decedent's estranged sister, Donna Larsen, submitted objections to the account, arguing that Brandon forfeited his interest in any property which would pass to him from the decedent's estate through Deanna's estate, due to his conviction for causing the decedent's death. Larsen sought a decree adjudging her to be the sole heir of the decedent, and directing the distribution of the decedent's estate assets to her, after the deduction of certain expenses.

DiRusso moved to dismiss the objections, and Larsen cross-moved for summary judgment on the objections. In a decision and order dated March 28, 2012, the Surrogate's Court denied DiRusso's motion and granted Larsen's motion in part (*Matter of Edwards*, 36 Misc 3d 486 [Sur Ct, Suffolk County 2012]). Specifically, the court concluded that Brandon forfeited any claim to assets inherited through Deanna's estate that are attributable to the decedent's estate. The court directed the distribution of the decedent's estate assets to DiRusso, as administrator of Deanna's estate, solely for the purpose of paying any outstanding creditors of Deanna's estate, and directed DiRusso to file a petition for judicial settlement of account within 60 days of receipt of the estate funds. Furthermore, the court directed that funds allocated to Deanna's estate that were traceable to the decedent's estate were to continue to be held by DiRusso pending final resolution of any pending appeals concerning Brandon's conviction. The court provided that, upon the representation that such appeals are pending, a guardian ad

litem would be appointed in the context of the accounting of Deanna's estate to report on the status of those appeals, if any, and to represent Brandon's interest, if any, in the accounting. The court entered a decree judicially settling the final account of the decedent's estate in accordance with the March 28, 2012, decision and order. DiRusso appeals, and we affirm.

## Analysis

The principle that a wrongdoer may not profit from his or her wrongdoing is deeply rooted in this state's common law. In 1889, the Court of Appeals decided the seminal case of *Riggs v Palmer* (115 NY 506 [1889]). In *Riggs*, a grandson, who had intentionally killed his grandfather in order to ensure his inheritance, was prevented from inheriting under the grandfather's will. In reaching this determination, the Court of Appeals held that "[n]o one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime" (*id.* at 511). In short, the *Riggs* rule "prevents wrongdoers from acquiring a property interest, or otherwise profiting from their own wrongdoing" (*Matter of Covert*, 97 NY2d 68, 74 [2001]).

This equitable rule has been employed in a variety of circumstances, for example, to find that a person forfeited all rights under an insurance policy when, to secure its immediate payment, he murdered the insured (*see New York Mut. Life Ins. Co. v Armstrong*, 117 US 591, 600 [1886]), to prevent a party from enforcing an illegal contract (*see Stone v Freeman*, 298 NY 268 [1948]), and to preclude recovery in tort by a plaintiff whose injuries directly resulted from a serious violation of the law (*see Manning v Brown*, 91 NY2d 116 [1997]).

The issue here is whether the *Riggs* doctrine may be extended to prevent a wrongdoer from indirectly profiting from his or her own wrongdoing. More specifically, we are asked to determine whether Brandon may inherit assets of the decedent's estate indirectly through Deanna's estate. While it is clear that Brandon would not be able to inherit from the decedent's estate directly, the issue of whether he may do so indirectly through Deanna's estate is less settled. Indeed, this is an issue of first impression, as there is no appellate precedent from New York addressing whether the *Riggs* doctrine applies where a killer seeks to inherit assets from his or her victim indirectly through the estate of a person not implicated in the unlawful killing.

We find guidance, however, in this Court's decision in *Campbell v Thomas* (73 AD3d 103 [2010]). In *Campbell,* the dispute

centered around a widow's right of election against her spouse's estate where the marriage had been voided due to the decedent husband's lack of capacity to consent to the marriage (*see id.* at 105, 109-110). Despite an EPTL provision attaching the right of election to marriages voided after the death of one spouse, this Court applied the *Riggs* doctrine to find that the widow/wife had forfeited her right of election by virtue of her wrongdoing (*see id.* at 120). Specifically, the wife was aware that the decedent lacked capacity to enter into the marriage and took unfair advantage of his condition for her own pecuniary gain, at the expense of his heirs (*see id.* at 117-118). In reaching its determination, this Court observed that the wife's wrongful conduct put her in a position to obtain benefits that became available by virtue of her being the decedent's spouse (*see id.* at 118). Significantly, this Court focused on the causal link between the wrongdoing and the benefits sought (*see id.*).

We also find guidance in a decision of the Appellate Court of Illinois, Fifth District. In *In re Estate of Vallerius* (259 Ill App 3d 350, 629 NE2d 1185 [1994]), Douglas White murdered his grandmother and, at the same time and in the same house, Douglas's brother, Craig White, murdered his grandmother's friend (*see* 259 Ill App 3d at 351, 629 NE2d at 1186). Douglas was convicted of the grandmother's murder and Craig pleaded guilty to the murder of the grandmother's friend (*see id.*). It was clear from the evidence presented at Douglas's trial that Craig played a role in the planning and commission of the murder of both the grandmother and the grandmother's friend (*see* 259 Ill App 3d at 352, 629 NE2d at 1187). The grandmother left a will naming Douglas and Craig as her sole beneficiaries (*see* 259 Ill App 3d at 351, 629 NE2d at 1186). The grandmother's only heir was her daughter, Renie White, who was the mother of Douglas and Craig (*see id.*). Approximately 2½ months after the grandmother was killed, Renie died, intestate, of natural causes (*see id.*). Thus, the Illinois court was faced with the issue of whether Douglas and Craig could receive any property or interest by reason of the death of the grandmother, whether through her estate or the estate of Renie (*see id.*).

Relying on the Illinois "slayer statute" (755 Ill Comp Stat Ann 5/2-6), which essentially codified the principle that one who unlawfully kills another may not profit from his or her own wrongdoing, the Illinois court held, in pertinent part, that Craig could not be permitted to receive any benefit by reason of the grandmother's death, whether through her estate directly or

indirectly through the estate of Renie (*see* 259 Ill App 3d at 353, 629 NE2d at 1188). As reasoned by the Illinois court, "[t]he fact that there is an intervening estate should not expurgate the wrong of the murderer or thwart the intent of the legislature that the murderer not profit by his wrong" (*see* 259 Ill App 3d at 355, 629 NE2d at 1189).

Here, as in *Campbell* and *Estate of Vallerius,* there is a clear causal link between the wrongdoing and the benefits sought (*see Campbell v Thomas*, 73 AD3d at 118). But for Brandon's killing of the decedent, the estate of Deanna would not likely include any assets from the decedent's estate. Furthermore, since only a relatively short period of time elapsed between the decedent's death and the death of Deanna, it is clear that Deanna's estate would include assets traceable to the decedent. Indeed, according to DiRusso's petition for letters of administration, Deanna's estate consists only of funds Deanna received as beneficiary of the decedent's retirement plan, and the expected inheritance from the decedent. Significantly, the decedent's estate has not yet been distributed to Deanna's estate, and no commingling of any funds between the two estates has occurred.

Under these circumstances, the Surrogate's Court appropriately exercised its equitable powers (*see* SCPA 201 [2]) in extending the *Riggs* doctrine to prevent Brandon from inheriting any portion of the decedent's estate through the estate of Deanna (*see Riggs v Palmer*, 115 NY 506 [1889]; *Campbell v Thomas*, 73 AD3d at 118; *Bennett v Allstate Ins. Co.*, 317 NJ Super 324, 722 A2d 115 [1998]; *In re Estate of Vallerius*, 259 Ill App 3d at 353-355, 629 NE2d at 1187-1189; *Matter of Macaro*, 182 Misc 2d 625 [Sur Ct, Westchester County 1999]). Deanna's "intervening estate" (*In re Estate of Vallerius*, 259 Ill App 3d at 355, 629 NE2d at 1189) should not be used to allow Brandon to profit from his unlawful killing of the decedent.

DiRusso argues that an extension of the *Riggs* doctrine in this case would raise a host of enforceability problems. For instance, DiRusso questions how the *Riggs* doctrine would be applied if Deanna had died 10 years after the decedent's death, and had invested the funds she inherited from the decedent into a house. In that situation, would Brandon be disqualified from inheriting the house as a distributee of Deanna's estate?

We need not answer that question, as those facts are not before this Court, and we decline to opine on such hypothetical situations. Instead, we observe that application of the *Riggs* doctrine is not amenable to a bright-line rule. In determining

whether the *Riggs* doctrine applies to a particular case, the court must examine the facts and circumstances before it, and determine whether the causal link between the wrongdoing and the benefits sought is sufficiently clear that application of the *Riggs* doctrine will prevent an injustice from occurring (*see Campbell v Thomas*, 73 AD3d at 118). Different facts and circumstances may lead to different results, but that does not prevent this Court from applying the *Riggs* doctrine in this case, where no speculation is required to see a clear causal connection between the wrongdoing and benefits sought.

DiRusso further contends that Deanna's interest in the decedent's estate vested upon the decedent's death, and that Deanna may do with her property as she wishes, even if others find her choices abhorrent. This "vesting" argument, however, is unpersuasive. As Deanna died intestate, any purported choice she may have made to leave her property to Brandon is not memorialized in a will. Moreover, even if Deanna had made an otherwise-discernable intentional choice to leave her property to Brandon—perhaps through knowledge that if she died intestate, her property would pass to her surviving spouse—to the extent that her property was inherited from the decedent, the *Riggs* doctrine would apply to prevent Brandon from benefitting from his own wrongdoing.

If this Court were to allow Brandon to inherit the assets of the decedent's estate through Deanna's estate, it would be rewarding Brandon's criminal behavior. This, in turn, would " 'allow [the court] to be made the instrument of wrong' " (*Campbell v Thomas*, 73 AD3d at 119, quoting *Matter of Hogan v Supreme Ct. of State of N.Y.*, 295 NY 92, 96 [1946]). This Court will not put its imprimatur on Brandon's efforts to gain from his admittedly criminal conduct.

DiRusso's remaining contentions are without merit. Accordingly, the Surrogate's Court properly extended the *Riggs* doctrine to prevent Brandon from profiting from his own wrongdoing, and the decree is affirmed insofar as appealed from.

DICKERSON, J.P., LEVENTHAL and LOTT, JJ., concur.

Ordered that the decree is affirmed insofar as appealed from, with costs payable by the appellant personally.