Matter of Deponceau (2026 NY Slip Op 26016)

[*1]

Matter of Deponceau

2026 NY Slip Op 26016

Decided on January 23, 2026

Surrogate's Court, Monroe County

Ciaccio, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on January 23, 2026
Surrogate's Court, Monroe County

In the Matter of the Petition of Theresa Deponceau and TONYA D. WILSON, Petitioners, FOR ADVICE, DIRECTION, RECOVERY OF REAL PROPERTY AND AN ORDER TO SELL REAL PROPERTY Pursuant to SCPA §§ 2107, 2103 and 1902.

File No. 2024-1987/C

Nathan A. Shoff, Esq., Lacy Katzen LLP, Rochester, New York, Attorneys for Petitioners.
Mark Vahey, Pro Se, Respondent.

Christopher S. Ciaccio, S.

INTRODUCTION
Tragically, on June 27, 2024, Andrew Vahey killed his grandfather Joseph DePonceau, and the same day killed himself. 
This proceeding by the executors of the Estate seeks to determine whether real property that decedent Joseph deeded to his grandson Andrew Vahey in 2022 and in which Joseph, as grantor, reserved both a life estate and a "limited power of appointment," should be forfeited and revert back to Joseph's estate, because Andrew was a "wrongdoer" by the definition first enunciated in Riggs v Palmer (115 NY 506 1889), and thus neither he nor his estate should benefit from his act of killing his grandfather.
The Verified Petition is labeled as one for "Advice, Direction, Recovery of Real Property and an Order to Sell Real Property." The petition's heading invokes three statutes - Surrogate Court Procedure Act (SCPA) § 1902, allowing for the court to authorize the disposition of real property in any one of the enumerated circumstances; SCPA 2107, which authorizes the court to "give advice and direction in extraordinary circumstances;" and SCPA § 2103, "proceeding by the fiduciary to recover property withheld . . ."
The only papers before the court are the Petition (with exhibits), a Memorandum of Law by counsel for the Estate, and an affidavit filed by Andrew's father as administrator of Andrew's estate opposing the relief requested. As often happens in this court, the parties seek a (less costly) summary determination without the formality of a motion for summary judgment. Accordingly, the court deems the proof is closed, the submissions are final, and the matter ripe [*2]for a decision as a summary judgment motion. 
FACTS
According to a newspaper account (attached to the petition as exhibit B), Andrew's roommate told police Andrew had called him, told him he had shot his grandfather and was going to kill himself. Andrew was spotted in Letchworth State Park carrying a long rifle, was surrounded by police, and turned the gun on himself before he could be taken into custody.
One year prior, on May 13, 2024, grandfather Joseph had executed a deed transferring his ownership of certain residential real property (522 Pinegrove Avenue in the Town of Irondequoit, County of Monroe) to Andrew, while retaining a life use for himself. The life use obligated Joseph to continue to be responsible for all taxes, assessments, etc. The deed of transfer also reserved to Joseph (the grantor) a "Limited Power of Appointment to appoint the remainder and/or life use in the property to any or more of Grantor's (Joseph's) issue . . . "
In other words, Andrew's interest could be completely divested by the grantor. At the time of his death, Joseph had not exercised the power of appointment. Yet pursuant to EPTL 6-5.2, the future estate — Andrew's interest in the property — was "vested."[FN1]

Theresa DePonceau and Tonya D. Wilson are the co-executors of the Estate of Jospeh DePonceau (decedent), having been granted letters testamentary on November 22, 2024.
The Petition, signed by both executors and verified as to the truth of the matters asserted, states that "decedent's death on June 27, 2024, was purposely, and directly, caused by Andrew Vahey." It goes on to say that "Petitioners believe that, because Andrew A. Vahey directly caused the death of decedent, Mr. Vahey's Estate must not profit therefrom, and his remainder interest should revert to the decedent's Estate."
ANALYSIS
As stated above, the formal pleading and submission requirements of a summary judgment motion have not been met, nonetheless, the parties want the court to decide the issues without more. But as with any summary judgment motion, the burden is on the moving party to make a "prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact necessitating a trial" (Matter of Maloy, 75 Misc 3d 390, 395-96, [Sur Ct, Monroe County 2022], citing Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; 2006905 Ontario Inc. v Goodrich Aerospace Can., Ltd., 197 AD3d 1008 [4th Dept 2021]; Oddo v City of Buffalo, 159 AD3d 1519, 1520 [4th Dept 2018]).
"The failure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers" (Maloy at 395, citing Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; CPLR 3212 [b]; Malamas v Toys "R" Us-Delaware, Inc., 94 AD3d 1438, 1438 [4th Dept 2012] [a moving party must affirmatively demonstrate the merits of its cause of action or defense and does not meet its burden by noting gaps in its opponent's proof]).
Proof offered by the moving party must be in admissible form. Further, the evidence should be viewed in the light most favorable to the party opposing the motion. (See Zuckerman v City of New York, 49 NY2d 557, 562 [1980]; Dix v Pines Hotel, 188 AD2d 1007, 1007 [4th Dept 1992].)
Once a prima facie showing has been made, however, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form, sufficient to establish the existence of material issues of fact which require a trial of the action (Alvarez, 68 NY2d at 324; Mortillaro v Rochester Gen. Hosp., 94 AD3d 1497 [4th Dept 2012]). Conclusory and speculative assertions are insufficient to defeat a motion for summary judgment (Trahwen, LLC v Ming 99 Cent City #7, Inc., 106 AD3d 1467 [4th Dept 2013], lv dismissed 21 NY3d 1066 [2013]).
A summary judgment motion "shall be granted if, upon all the papers and proof submitted, the cause of action or defense shall be established sufficiently to warrant the court as a matter of law in directing judgment in favor of any party" (CPLR 3212 [b]).
As stated above, the Estate contends summary judgment is warranted forfeiting Andrew's interest in 522 Pinegrove Avenue, which upon his grandfather's death would be in fee simple absolute, because Andrew "directly caused" the death of his grandfather.
In Riggs v Palmer (115 NY 506, 508-509 [1889]) the Court of Appeals established the equitable principle that a wrongdoer shall not profit by an "evil homicidal act." In that case Elmer Palmer, a young man of sixteen, to "obtain the speedy and immediate possession of his [grandfather's] property," poisoned his grandfather, knowing of "provisions made in his favor in the will" and thereby preventing his grandfather from changing the will, which "he had manifested some intention of to do."
Andrew's estate opposes on the ground that Andrew's interest was a vested interest and not subject to forfeiture. Indeed, after Riggs was decided, its progeny held on multiple occasions that a wrongdoer does not forfeit that in which he already has a vested interest. 
Thus, the Court of Appeals in Matter of Covert (97 NY2d 68, 74 [2001]) stated that "we have never applied the doctrine to cause a wrongdoer's forfeiture of a vested (emphasis added) property interest," and that " public policy, as embodied in Civil Rights Law § 79-b,[[FN2]
] militates against application of Riggs as a means of effecting a proprietary forfeiture."
Likewise, in Matter of Mathew (270 AD2d 416, 417 [2d Dept 2000]), where the husband killed his wife and was convicted of murder, the court held that the husband was entitled to "the commuted value of a life estate in one-half of the property or the proceeds from its sale," on the theory that his co-tenancy is a vested interest at least for the duration of his life. He forfeits, however, the total proceeds of a sale or the ownership.
Clearly, and the Estate concedes, Andrew's interest was "vested" at the moment his grandfather deeded him the property,[FN3]
but argues that because it was a "future interest subject to [*3]complete defeasance" (EPTL 6-4.9), and because it could be "divested," the property was subject to forfeiture for his act of killing his grandfather, in which case it would revert to the grandfather's estate. This "vested" interest, subject to being completely stripped by the exercise of the power of appointment, made it somehow (to characterize the Estate's position) less than fully vested, as it was not unconditional, not guaranteed to be enjoyed (like a tenancy by the entirety) and not protected, perhaps more akin (my characterization) to a bequest in a will rather than a truly non-revocable "vested" interest.
There is, however, a preliminary issue, one not briefed by either party, which is whether Andrew was a "wrongdoer."
The application of the Riggs v Palmer principle is not always straightforward, and not all wrongful conduct will disqualify a person as a distributee (6 Warren's Heaton on Surrogate's Court Practice § 74.13 [7th ed rev]).
Case law allows for forfeiture of a (not vested) future interest where the "wrongdoer" is convicted of murder or manslaughter in the first degree, but forfeiture is not "automatic" where the charge (or the conviction) is for "criminally negligent homicide" or "involuntary manslaughter" Matter of Viafore [Rice], 58 Misc 3d 1210[A], 2018 NY Slip Op 50048[U] [Sur Ct, Dutchess County 2018]; Matter of Auchmoody, 40 Misc 3d 1237[A], 2013 NY Slip Op 51472[U] [Sur Ct, Oneida County 2013]).
Nor does forfeiture occur where the "wrongdoer" is found "not guilty by reason of mental defect or disease"[FN4]
(see e.g. Matter of Bobula, 19 NY2d 818 [1967]; Matter of Wirth, 59 Misc 2d 300, 301 [Sur Ct, Erie County 1969]; Matter of Fitzsimmons, 64 Misc 2d 622, 623 [Sur Ct, Erie County 1970]).
Here, no facts have been elicited to determine whether Andrew intentionally killed his grandfather or killed him "involuntarily" or (by Andrew's estate, on whom the burden would rest) as a result of mental disease or defect (Penal Law § 40.15). Maybe the grandfather pushed him, and the gun, obviously loaded, unintentionally went off. Maybe it was pointed at the floor and Andrew stepped back, tripped and it pointed up and discharged. What happened is not known but certainly has not been established by anything approaching admissible non-hearsay evidence.
The assertion by the executors, who do not pretend to have witnessed the event, that Andrew "purposely" killed his grandfather, does not constitute "sufficient evidence," nor does the roommate's account as set forth in a newspaper article.
In Matter of Auchmoody (40 Misc 3d 1237[A], 2013 NY Slip Op 51472[U] [Sur Ct, Oneida County 2013]), a son was accused of killing his mother and was indicted on a charge of Manslaughter in the Second Degree.[FN5]
He entered a plea of guilty to Criminally Negligent Homicide.[FN6]
Surrogate Gigliotti held a lengthy hearing with multiple witnesses to determine whether the son's actions in causing his mother's death were "reckless," and the parties agreed, that if the court found the son's actions were "reckless," the son's inheritance would forfeit, which the court ultimately did.
Here, the parties have not requested a hearing, and no argument has been made that there is a triable question of fact.
The burden is on the Estate to establish that Andrew is a "wrongdoer" (Matter of Bobula, 19 NY2d 818 [1967]; Matter of Pikul, 192 AD2d 259, 260 [1st Dept 1993]).
The burden not having been met, Andrew's interest in the real property, which ascended to a fee simple absolute upon the death of his grandfather, passes to his Estate.
Even if Andrew were deemed to be a "wrongdoer" — guilty of an intentional act of murder or voluntary manslaughter - subject to forfeiture of some aspect of the decedent's estate to which he would otherwise have been entitled - his interest in the property, under these circumstances, would not forfeit.
It is an issue of first impression, whether the remainder of real property where the grantor has reserved not only a life estate but also a limited power of appointment can be said to have a vested interest such that his wrongful act of murdering the life estate owner will cause him to [*4]forfeit the property.
On one hand, Andrew had limited rights vis-à-vis the property. He couldn't enjoy it, possess it, mortgage it, or collect rents. His ownership interest could be "divested" at any time by the life estate holder pursuant to the power of appointment.
It has been written that "the life tenant is the exclusive owner of the land during the lifetime of the life tenant subject only to certain well-defined limitations or duties even to the exclusion of a reversioner or remainderman" (Thorn v Stephens, 169 Misc 2d 832, 833 [Sup Ct,, Westchester County 1995]; Rasch, New York Law and Practice of Real Property § 6:13, at p. 71 [2d ed]).
The Restatement of the Law, Property, § 117 at p. 364 states: "The owner of a possessory estate for life has the same right that his possession be not disturbed as he would if he were the owner of a possessory estate in fee simple absolute in the same land, except to the extent that the owner of a future interest in the same land has a privilege to interfere with such possession for the perfection, assertion or protection of the rights, powers or privileges of the owner of such future interest."
And in purely equitable terms, it seems unfair to allow Andrew's estate to gain, as a result of the death of his grandfather at his hands, something that he did not have before, something he could not attain while his grandfather was alive, something that could be taken away from him, something he did not have the enjoyment of before (or his estate would have what it did not have before), which is ownership of the property in absolute fee simple, at least not for the life of the grandfather.
Thus, it is not too much of a stretch to analogize the life estate with a power of appointment to a bequest in a Will. The advantage for modern estate planning purposes - especially for Medicaid eligibility at least - is that the real property is removed from the grantor's probate estate, but the grantor retains the right, not to pull it back in, but to give it to someone else, much like could be done by amending a Will or executing a codicil.[FN7]

On the other hand, as owner, Andrew retained certain rights and obligations, which he would not have if he were named as a devisee in the grandfather's Will. He could enter upon the land to inspect for waste and for making repairs necessary to protect his future interest, as well for other reasons. (Thorn v Stephens, 169 Misc 2d at 833-834, citing the Restatement of Law, Property, § 117, subd. (c) at p. 366; and 1 Rasch, New York Law & Practice of Real Property § 6.14 [2d ed]). He would no doubt be liable for taxes and other charges should they not be paid by the life estate holder. Subject to the life estate and attornment, he could sell the property — nothing in the deed prevented it (see e.g. Matter of O'Donnell, 240 NY 99, 105 [1925]; Thorn v Stephens, 169 Misc at 833).
And the circumstances must be considered. As noted by the Second Department, ". . . we observe that application of the Riggs doctrine is not amenable to a bright-line rule. In determining whether the Riggs doctrine applies to a particular case, the court must examine the facts and circumstances before it and determine whether the causal link between the wrongdoing and the benefits sought is sufficiently clear that application of the Riggs doctrine will prevent an injustice from occurring (see Campbell v Thomas, 73 AD3d at 118, 897 N.Y.S.2d 460). Different facts and circumstances may lead to different results . . ." (Matter of Edwards, 121 AD3d 336, 341-42 [2d Dept 2014]; see also Lori A. Sullivan, Riggs v. Palmer: A Fresh Look at the Application of Riggs v. Palmer in View of New York's Proposed Medical Aid in Dying Legislation; Trust and Estates Law Section Journal, Vol 57, no 2 [2024]).
Thus, the analysis of whether Andrew, assuming he is a wrongdoer, should take his apparently vested remainder interest circles back to the essential principle of Riggs v. Palmer. That principle, simply stated, is that if you kill someone with intention of accelerating an inheritance or other benefit, you don't get it. In applying that principle to aa "Riggs v Palmer situation, the concept of a "vested interest" is inadequate to determine equitable results.
On the face of the scantest of facts about what was transacting factually and emotionally between Andrew and his grandfather, it cannot be said that Andrew killed his grandfather with the intent of confiscating the property. Andrew was no "Elmer Palmer." What he did was not hidden or surreptitious. It in all likelihood was not committed with a great deal of "malice aforethought." This undoubtedly troubled young man committed suicide within a few hours of killing his grandfather — it can be inferred, he wasn't thinking about what to do with the property.
An unstated thread running through the Riggs v Palmer progeny is that the perpetrator was motivated by a desire to benefit himself, like Elmer, or his estate. Public policy as much as fairness are the reasons that Elmer should not take from his grandfather's estate. As Riggs affirms, "No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. These maxims are dictated by public policy, have their foundation in universal law administered in all civilized countries, and have nowhere been superseded by statutes" (Riggs v Palmer, 115 NY at 511-12).
Here, however, no public policy interest is implicated where no evidence of any kind, speculative or otherwise, suggests that Andrew as perpetrator committed the act for personal gain. Having said that, this is not to state a general principle of future application, it is only that the circumstances here do not compel the conclusion that the interest should be forfeited.
Accordingly, should Andrew be deemed a "wrongdoer" within the definition of Riggs v Palmer and its progeny, the court would not, under the circumstances here, forfeit his interest in the property. A different result might occur if evidence existed establishing that Andrew did commit intentional murder motivated by a desire to possess the property immediately. But that is not the case, and the question is not before the court.
CONCLUSION
The motion for summary judgment is denied, as the moving party - the Estate of Joseph DePonceau - has failed to establish its entitlement to judgment as a matter of law.
Counsel for Petitioners shall file a proposed Order.
Dated: January 23, 2026
Rochester, New York
Hon. Christopher S. Ciaccio
Surrogate, Monroe County

Footnotes

Footnote 1:"The existence of an unexecuted power of appointment does not prevent the vesting of a future estate, limited in default of the execution of the power." EPTL 6-5.2

Footnote 2:Civil Rights Law § 79-b states that "A conviction of a person for any crime, does not work a forfeiture of any property, real or personal, or any right or interest therein."

Footnote 3:Indeed, no other conclusion could be drawn, given EPTL § 6-5.2 — "The existence of an unexecuted power of appointment does not prevent the vesting of a future estate, limited in default of the execution of the power." EPTL 6-5.2

Footnote 4:Penal Law § 40.15:
In any prosecution for an offense, it is an affirmative defense that when the defendant engaged in the proscribed conduct, he lacked criminal responsibility by reason of mental disease or defect. Such lack of criminal responsibility means that at the time of such conduct, as a result of mental disease or defect, he lacked substantial capacity to know or appreciate either:
1. The nature and consequences of such conduct; or
2. That such conduct was wrong.

Footnote 5:Penal Law § 125.15 (1):
A person is guilty of manslaughter in the second degree when:
1. He recklessly causes the death of another person.
Recklessly is defined at Penal Law § 15.05 (3):
3. "Recklessly." A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto.

Footnote 6:Penal Law § 125.10:
A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person.
Criminally negligent homicide is a class E felony.
Criminal negligence is defined at Penal Law § 15.05 (4):
4. "Criminal negligence." A person acts with criminal negligence with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

Footnote 7:Historically, the concept of vested life estates in English common law developed primarily to manage future interests in land, evolving from rigid feudal requirements of immediate possession to a more flexible system that recognized secured future rights. It shifted from a focus on the seisin (possession) of land to the entitlement to property, ultimately balancing the desire for dynastic control of land with the legal need for alienability. 
See generally, Sir William Blackstone, Commentaries on the Laws of England in Four Books (1768-1770)