*72
 
 OPINION OF THE COURT
 

 Ciparick, J.
 

 The issue, on this appeal is whether the doctrine of
 
 Riggs v Palmer
 
 (115 NY 506), which disallows a wrongdoer from profiting by his or her crime at the expense of the victim’s estate, mandates the disinheritance of the wrongdoer’s heirs and distributees, thereby negating their entitlement to an express testamentary bequest made in the victim’s will. We conclude, under the circumstances of this case, that where a victim’s will makes bequests to the wrongdoer’s family — innocent distributees — their status as legatees under the victim’s will is not vitiated, and they are not disinherited by virtue of their familial relationship to the wrongdoer.
 

 I
 

 This case involves a dispute between two families over the estates of a deceased couple, Edward M. and Kathleen Covert. Tragically, on April 3, 1998, Edward shot and killed Kathleen, then turned the gun on himself and took his own life. Edward was survived by his parents, Edward F. Covert and Joan Covert, and his siblings, Theresa Guinan, Gayle Diffendorf and Phyllis Thompson (the Coverts). Excluding Edward, Kathleen was survived by her parents, Robert L. Millard and Carol A. Millard, and her siblings, Robert L. Millard, II and Kelly Hawley (the Millards).
 

 Prior to this incident, on December 14, 1995, Edward and Kathleen executed a joint will providing for the final disposition of their property. The will designated Kelly Hawley as executrix. The second paragraph of the will provided,
 

 “[u]pon the death of one of us leaving the other of us surviving, all the property and estate of every kind and nature and wheresoever situate, of the one so dying first of which he or she has the power of disposal, is hereby given, devised and bequeathed to the survivor absolutely and without any limitation or restriction whatsoever.”
 

 Upon the death of the surviving spouse, the fifth paragraph of
 
 *73
 
 the will bequeathed the couple’s jointly owned time share and jewelry to Kelly Hawley or to named alternative legatees. Also upon the death of the survivor, the residuary estate was to be distributed into three equal shares — one third each to Edward’s parents, Kathleen’s parents and decedents’ siblings.
 

 At the time of her death, Kathleen’s combined probate and nonprobate assets were valued at $225,000. Edward’s assets— including two life insurance policies and a union retirement fund payable to Kathleen as primary beneficiary and to his parents as contingent beneficiaries — were worth approximately $71,000. The couple further held assets valued at $121,000 as joint tenants.
 

 On May 21, 1998, the court admitted the will to probate and issued letters testamentary to Hawley as executor. In March 1999, Hawley petitioned Surrogate’s Court requesting direction in the distribution of the estates. The Coverts filed an answer to the petition in June 1999, demanding strict compliance vrith the express terms of the will, and requesting division of the estates in equal shares among Kathleen’s parents, Edward’s parents and the surviving siblings. In response, the Millards requested that the court preclude the Coverts from taking
 
 under
 
 the will due to Edward’s role in Kathleen’s death. Thereafter, the Coverts moved for summary judgment to dismiss the Millards’ answer and to compel distribution according to the terms of the will.
 

 Surrogate’s Court denied the Coverts’ motion and granted summary judgment to the Millards, opining that “the
 
 Riggs
 
 precedent must sweep away all other arguments and require a forfeiture of the Covert family’s interest in Kathleen’s property including her insurance and the couple’s joint property.” The court precluded the Coverts from taking any of Kathleen’s property, yet allowed them to receive a share of Edward’s individual property. The Appellate Division unanimously modified the order, treating Edward as having fictionally predeceased Kathleen and directing that all property pass through Kathleen’s estate, ultimately to be distributed in equal thirds. Additionally, the Court ordered that Edward’s two life insurance policies and retirement fund proceeds pass to the respective contingent beneficiaries (279 AD2d 48). We granted the Millards leave to appeal (96 NY2d 711) and now affirm, for different reasons. II
 

 Our analysis begins with a restatement of settled principles regarding will construction and testamentary distribution. A
 
 *74
 
 validly executed joint will is a proper and legally tenable means of effecting a testamentary disposition of property
 
 (see, Schwartz v Horn,
 
 31 NY2d 275;
 
 Rastetter v Hoenninger,
 
 214 NY 66;
 
 Matter of Diez,
 
 50 NY 88). This Court has long recognized that testamentary instruments are strictly construed so as to give full effect to the testator’s clear intent
 
 (see, Matter of Bieley,
 
 91 NY2d 520, 525;
 
 Williams v Jones,
 
 166 NY 522).
 

 Notwithstanding the exceptional degree of deference afforded testator intent, this Court has consistently reaffirmed the equitable principle that “[no] one shall be permitted to profit by his [or her] own fraud, or to take advantage of [their] own wrong, or to found any claim upon [their] own iniquity, or to acquire property by [their] own crime”
 
 (Riggs v Palmer,
 
 115 NY 506, 511;
 
 see generally, Manning v Brown,
 
 91 NY2d 116;
 
 New England Mut. Life Ins. Co. v Caruso,
 
 73 NY2d 74). In
 
 Riggs,
 
 this Court fashioned an equitable rule that prevented a grandson legatee who murdered his grandfather from profiting from his crime. This Court voided the gift to the grandson, Elmer Palmer, and allowed the estate to pass to the testator’s daughters and to Elmer’s mother, in accord with the provisions of the will. The Court did not force the estate into intestacy, nor did the Court prevent the wrongdoer’s mother from taking under the will.
 

 The
 
 Riggs
 
 rule prevents wrongdoers from acquiring a property interest, or otherwise profiting from their own wrongdoing. However, we have never applied the doctrine to cause a wrongdoer’s forfeiture of a vested property interest. Indeed, public policy, as embodied in Civil Rights Law § 79-b, militates against application of
 
 Riggs
 
 as a means of effecting a proprietary forfeiture. Section 79-b provides, in pertinent part, that “[a] conviction of a person for any crime, does not work a forfeiture of any property, real or personal, or any right or interest therein” (Civil Rights Law § 79-b).
 

 Because Kathleen died at Edward’s hand, the Riggs doctrine nullifies any and all bequests by Kathleen to him. There is no need to employ the Appellate Division’s fiction that Edward “predeceased” Kathleen. Since
 
 Riggs
 
 voids the gift to Edward, any testamentary bequests to which he would have been entitled pass directly into the residuary.
 

 The Millards would apply
 
 Riggs
 
 to void the gift to the Coverts, as well. Absent a showing that the Coverts are anything other than innocent distributees,
 
 Riggs
 
 is
 
 *75
 
 inapplicable. The Millards would further have us disregard settled principles in favor of invalidation of the residuary clause and an intestate distribution, arguing that the will’s residuary clause applied only if Kathleen survived Edward and received his property. Contrary to the Millards’ assertions, however, failure of the preceding gift does not destroy, but accelerates, the residuary (see,
 
 Matter of Bieley, supra,
 
 91 NY2d, at 529;
 
 see also, Williams, supra,
 
 166 NY, at 537;
 
 Matter of Fordham,
 
 235 NY 384, 389). Furthermore, the mere existence of a testamentary instrument gives rise to a presumption against intestacy (see,
 
 Matter of Bieley,
 
 supra, 91 NY2d, at 525). Application of the presumption against intestacy further supports validation of the residuary clause by preventing a portion of the estate from falling into intestacy. We conclude that neither the will, nor any clause thereof, is invalid, and accordingly, no portion of either estate falls into intestacy.
 

 Ill
 

 This appeal centers on three main types of property to be distributed — individual property owned outright and independently by Edward and Kathleen respectively, joint property with a right of survivorship and individual assets with named beneficiaries. Each type of property is subject to its own analysis.
 

 The individual assets owned outright, other than the specific bequest to Hawley (which is uncontested), must pass through decedents’ respective wills, and into the residuary. Similarly, Edward’s individual property owned outright passes through
 
 his
 
 will. In that Kathleen predeceased him, his property passes into the residuary, also to be distributed into equal thirds to the Covert parents, the Millard parents and the siblings.
 

 In contrast to individual property, a joint tenant is entitled to an immediate one-half interest in the joint property
 
 (see, Matter of Kleinberg v
 
 Heller, 38 NY2d 836;
 
 Brown v Bowery Sav. Bank,
 
 51 NY2d 411). This interest is immediately vested, entitling either tenant to a half portion, even though only one tenant may have established and contributed to the asset
 
 (see, Matter of Suter,
 
 258 NY 104;
 
 Matter of Bricker v Krimer,
 
 13 NY2d 22, 27). Thus, before their deaths, Edward and Kathleen each owned an undivided one-half interest, with a right of survivorship, in their joint property. Allowing Edward the one-half interest in that property would not aiford him any benefit from his wrongdoing. Consistent with the public policy
 
 *76
 
 articulated in Civil Rights Law § 79-b, his one-half interest is not forfeited.
 

 Riggs,
 
 however, prevents Edward from profiting from his own wrongdoing. Because Edward killed Kathleen, he cannot succeed to the survivorship interest that would ordinarily arise on the death of his joint tenant. Therefore, the joint property should be divided evenly, half passing through Edward’s estate and half through Kathleen’s.
 

 Finally, the insurance and pension plan proceeds must pass to their alternative beneficiaries. Insurance policies are, in essence, creatures of contract, and accordingly, subject to principles of contract interpretation
 
 (see, Hartol Prods. Corp. v Prudential Ins. Co. of Am.,
 
 290 NY 44;
 
 Zasuly v Mutual Benefit Health & Acc. Assn.,
 
 19 NY2d 385). “It is unquestionably the rule that ‘[Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous the terms are to be taken and understood in their plain, ordinary and proper sense’ ”
 
 (see, Hartol Prods. Corp. v Prudential Ins. Co. of Am.,
 
 290 NY 44, 47 [quoting
 
 Johnson v Travelers Ins. Co.,
 
 269 NY 401, 408]). Pension plans are also contracts subject to construction under similar principles
 
 (see generally, Matter of Day v Mruk,
 
 307 NY 349, 354).
 

 Neither party claims that the terms of the relevant instruments are deficient or ambiguous. Edward’s insurance policies name Kathleen as primary beneficiary, and his father as contingent beneficiary. His retirement plan is payable primarily to Kathleen and in the alternative to his parents. The Mil-lards claim that our decision in
 
 Petrie v Chase Manhattan Bank
 
 (33 NY2d 846) precludes payment to the contingent beneficiaries. Their reliance on
 
 Petrie
 
 is misplaced.
 

 In
 
 Petrie,
 
 the murderer was a beneficiary of his victim’s trust and first in line to benefit. He would have directly profited by his wrongful act and acquired property to which he was not otherwise entitled. Applying
 
 Riggs
 
 prevented him from benefit-ting from his criminal act. Likewise, we further concluded that
 
 Riggs
 
 equally applied to prevent the contingent beneficiaries, chosen by the murderer, not by the settlor of the trust, from recovering trust proceeds.
 

 Unlike
 
 Petrie,
 
 here we are concerned with the disposition of the slayer’s property. The insurance and pension funds were Edward’s own property both before and after Kathleen’s death.
 
 *77
 
 Because the alternative beneficiaries are innocent distributees of his property, they are entitled to take pursuant to the provisions of the respective instruments.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs to all parties appearing separately and filing separate briefs payable out of the estates.
 

 Chief Judge Kaye and Judges Smith, Levine, Wesley, Rosenblatt and Graffeo concur.
 

 Order affirmed, etc.