15-1717
*Lantheus Medical Imaging, Inc. v. Zurich American Insurance Company*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of May, two thousand and sixteen.

PRESENT: RALPH K. WINTER,
RICHARD C. WESLEY,
GERARD E. LYNCH,
    *Circuit Judges.*

———————————————

LANTHEUS MEDICAL IMAGING, INC.,

    *Plaintiff-Appellant,*

  v.        No. 15-1717

ZURICH AMERICAN INSURANCE
COMPANY,

    *Defendant-Appellee.*

———————————————

FOR PLAINTIFF-APPELLANT:     RUKESH A. KORDE, Covington & Burling LLP, Washington, D.C. (William F. Greaney, Kevin King, Covington & Burling LLP, Washington, D.C.; Andrew A. Ruffino, Covington & Burling LLP, New York, NY, *on the brief*).

FOR DEFENDANT-APPELLEE:     PHILIP C. SILVERBERG (William D. Wilson, *on the brief*), Mound Cotton Wollan & Greengrass LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Failla, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED AND DECREED** that the judgment of the District Court is

AFFIRMED.

Plaintiff-Appellant Lantheus Medical Imaging, Inc. ("Lantheus") appeals

from a decision of the United States District Court for the Southern District of

New York (Failla, *J.*) granting summary judgment to Defendant-Appellee Zurich

American Insurance Co. ("Zurich") on an insurance coverage dispute that arose

between the parties after Lantheus experienced a supply-chain disruption  in late

spring 2009.  The supply-chain disruption occurred due to a fifteen-month

shutdown of a National Research University nuclear reactor ("NRU Reactor")

that forced Lantheus to suspend dozens of production runs for one of its

products.  Lantheus sought coverage from Zurich for the resulting losses, but Zurich denied the claim.[1]

"Insurance policies are, in essence, creatures of contract, and, accordingly, subject to principles of contract interpretation." *In re Estates of Covert*, 97 N.Y.2d 68, 76 (2001).  Under New York law, the interpretation of a contract "is a matter of law for the court to decide." *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (internal quotation marks omitted); *see also Parks Real Estate Purchasing Grp. v. St. Paul Fire and Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) ("The initial interpretation of a contract is a matter of law for the court to decide." (internal quotation marks and alteration omitted)).

"'Where contractual language is ambiguous and subject to varying reasonable interpretations, intent becomes an issue of fact and summary judgment is inappropriate. . . .  Only where the language is unambiguous may the district court construe it as a matter of law and grant summary judgment accordingly.'" *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006) (quoting *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990)).  If the Court finds contract provisions to be unambiguous, then it must interpret those provisions in

---

[1] We review *de novo* a district court's grant of summary judgment. *See Lynch v. City of New York*, 737 F.3d 150, 156 (2d Cir. 2013).  We assume the parties' familiarity with the facts and record below, which we reference only as necessary to explain our decision.

light of "their plain and ordinary meaning." *10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 119 (2d Cir. 2010) (internal quotation marks omitted)).

When an insurance contract contains an exclusion provision, the insurer generally bears the burden of proving that the claim falls within the scope of an exclusion by establishing that "the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." *Vill. of Sylvan Beach v. Travelers Indem. Co.*, 55 F.3d 114, 115–16 (2d Cir. 1995); *see also Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311 (1984) (stating that exclusions "are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction"). After an exception to an applicable exclusion is raised, the burden shifts to the insured to establish coverage. *Ment Bros. Iron Works Co. v. Interstate Fire & Cas. Co.*, 702 F.3d 118, 122 (2d Cir. 2012); *see also Northville Indus. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 89 N.Y.2d 621, 634 (1997) ("Shifting the burden to establish the exception conforms with an insured's general duty to establish coverage where it would otherwise not exist[.]").

The District Court's analysis is thorough and sound. From the outset, the District Court drew all inferences in favor of Lantheus, accepting that "the breach occurred because of a 'pressure surge . . . act[ing] upon an already weakened point.'" Special App'x 28 (alterations in original) (quoting Pls. Opp. to Summary Judgment at 10). It specifically declined to resolve certain outstanding factual ambiguities that were not necessary to decide Zurich's summary judgment motion, including whether "General Corrosion precipitated the NRU Reactor shutdown." Special App'x 36. Honoring the anti-concurrent causation language of Exclusion 5b, the District Court found as a factual matter (and based on agreement of both of Lantheus's experts) "that a thinning over time of the aluminum wall of the reactor vessel, referred to as [redacted] Penetration, was a necessary component to the through-wall breach that occurred after a rapid shift in pressure." Special App'x 29–30. The District Court then concluded as a legal matter that the definition of "corrosion" as used in Exclusion 5b "fully embraces" this condition, including Lantheus's assertion that an electrochemical cell caused the [redacted] Penetration.[2] Special App'x 36.

---

[2] Before reaching these issues, the District Court determined as a threshold matter that it need not resolve the issue of whether the contingent business income loss coverage ("CBI") provision of the Policy required total cessation of the operations at the Billerica Facility before Lantheus could collect insurance from a covered loss. The District Court

Lantheus argues that Exclusion 5b must be read as a whole and "generally connotes a process by which material is gradually consumed or worn away, either by external forces or the material's own inherent qualities."  Appellant's Br. 41; *see also City of Burlington v. Indem. Ins. Co. of N. Am.*, 332 F.3d 38, 49–50 (2d Cir. 2003) (reading a similar exclusion as a whole and "in light of the . . . history of judicial interpretation of all-risks policies," and holding such exclusion "limited coverage to externally caused losses" and "exclud[ed] intrinsically caused losses from . . . coverage").  Lantheus also argues that the ordinary meaning of corrosion is a "gradual process" that does not occur rapidly.  *See id.* at 36–37.

Relying on expert testimony provided by Lantheus's metallurgist and nuclear engineer, it was not error for the District Court to draw the factual conclusion that "the [redacted] Penetration contribute[d] concurrently or in any

---

observed that "[i]n 2005, the Second Circuit observed that 'CBI coverage is a relatively recent development in insurance law and its scope has not yet been fully delineated by the courts,'" Special App'x 23 (quoting *Zurich Am. Ins. Co. v. ABM Indus., Inc.*, 397 F.3d 158, 168 (2d Cir. 2005)), and further that "[t]his observation remains true ten years later, particularly in the context of importing conventions from the field of ordinary [business income loss coverage ("BI")] insurance."  Special App'x 23.

We need not resolve this novel issue to dispose of the present case.  Like the District Court, we assume for purposes of this appeal that Lantheus is covered under the CBI provision but find ultimately that Exclusion 5b operates to foreclose coverage under the Policy.

sequence to the . . . damage." Special App'x 36 (internal quotation marks omitted). Nor was it error for the District Court to grant summary judgment to Zurich on the basis of its finding "that the formation of the [redacted] Penetration and its concurrent involvement in the through-wall breach that shut down the NRU Reactor is sufficient to bring the loss within the corrosion exclusion." Special App'x 36–37. Taking the facts in the light most favorable to Lantheus, the [redacted] Penetration of the reactor vessel wall took approximately twenty-nine days to occur and was caused at least in part by the differential aeration cell. *See* Appellant's Reply Br. 6. Thus, there is no question of material fact that the NRU Reactor shutdown falls into Exclusion 5b, even accepting Lantheus's proposed version of events.

We have considered all of the Appellant's remaining arguments and find them to be without merit. Accordingly, we AFFIRM the judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7