GEORGE B. DANIELS, United States District Judge:
Plaintiff Fabrique Innovations, Inc. d/b/a Sykel Enterprises ("Fabrique") brings this action alleging that Defendant Federal Insurance Company ("Federal") breached its contractual obligations by denying coverage for a claim made under an Ocean Cargo Insurance Policy (the "Policy") arising from Fabrique's business dealings with a third party, Hancock Fabrics, Inc. ("Hancock"). (See Compl., ECF No. 1.) The parties cross-move for summary judgment on the issue of Federal's liability under the terms of the Policy. (ECF Nos. 38, 44.) Federal's motion for summary judgment is DENIED. Fabrique's cross-motion for summary judgment is GRANTED.
I. FACTUAL BACKGROUND[1]
A. Fabrique's Business Arrangement with Hancock Fabrics, Inc.
Fabrique has licenses to manufacture and sell finished fabrics and plush goods, such as pillows, dolls, and blankets, bearing the logos of professional sports teams and universities. (Stmt. of Undisputed Material Facts ("Def. 56.1 Stmt."), ECF No. 40-1, ¶ 2; Pl. Stmt. Pursuant to Local Rule 56.1 ("Pl. 56.1 Stmt."), ECF No. 48, ¶ 13.) Hancock purchased Fabrique's fabrics for sale in its retail stores for more than forty years. (Id. ¶ 3.) Prior to October 2015, Hancock picked up the fabrics from Fabrique's California warehouse. (Id. ¶ 4.) In October 2015, Fabrique and Hancock met to discuss a new arrangement, under which Hancock would store Fabrique's goods at Hancock's distribution center in Baldwyn, Mississippi (the "Distribution Center") and ship the goods to fill orders from other Fabrique customers. (Id. ¶ 5.) As part of this arrangement, Hancock and Fabrique entered a Scan Based Trading Agreement (the "Agreement") concerning certain Fabrique plush goods (the "Goods"), which identified Hancock as "Purchaser" and Fabrique as "Vendor." (Id. ¶ 6.)
The Agreement provides, among other things, that "[t]itle to the Goods remains with Vendor until the Goods are sold by Purchaser in the regular course of business, except that Purchaser shall bear the risk of Shrink." (Id. ¶ 7 (quoting Decl. of Philip C. Silverberg dated Mar. 9, 2018 ("Silverberg Decl."), Ex. M ("Agmt."), ECF No. 39-13, ¶ 9.) The term "Shrink" is defined as "loss or damage to Vendor's Goods caused by vandalism, theft, pilferage, or unexplained loss on Purchaser's premises." (Agmt. ¶ 2.) The Agreement further provides that "Vendor ... shall maintain insurance on the Goods while the Goods are in transit to [D]istribution [C]enter ... and while such Goods are located at the [D]istribution [C]enter." (Id. ¶ 5.)
In October 2015, Fabrique requested that Federal add the Distribution Center as a covered location to the Policy that Fabrique had purchased from Federal. (Pl.
*344 56.1 Stmt. ¶ 1.) In addition to the Goods covered by the Agreement, pursuant to a verbal agreement between Hancock and Fabrique, the Distribution Center was used to store other goods that Hancock shipped to third party retailers. (Def. 56.1 Stmt. ¶ 10.)
B. Fabrique's Insurance Policy with Federal
The Policy provided coverage on an "all risk" basis, subject to certain exclusions. (Pl. 56.1 Stmt. ¶ 4 (citing Decl. of Andrew N. Bourne dated Apr. 6, 2018 ("Bourne Decl."), Ex. 2 ("Dubak Depo. Tr."), ECF No. 46-2, at 108:2-109:1); Def. Resp. to Pl. Stmt. of Undisputed Material Facts ("Def. Resp. to Pl. 56.1 Stmt."), ECF No. 56, ¶ 4.) One such exclusion (the "Willful Misconduct Exclusion") provides, in relevant part, "This insurance does not apply to loss, damage or expense caused by or resulting from willful misconduct, fraud or deceit by you, your partners, officers or employees ... or willful misconduct, fraud or deceit by other parties involved in the sale or purchase of merchandise[.]" (Pl. 56.1 Stmt. ¶ 10 (quoting Bourne Decl., Ex. 3 ("Policy"), ECF No. 46-3, at Federal_001323).)
The Policy was later modified by an endorsement (the "Storage Endorsement") that added "Additional Coverages," including coverage for "direct physical loss or damage to merchandise in transit caused by or resulting from a covered peril while such merchandise is temporarily in storage ... subsequent to leaving the point of origin for commencement of transit; or... in anticipation of transit."[2] (Policy at Federal_001362.) The Storage Endorsement is subject to certain exclusions, including one (the "Dishonest Acts Exclusion") for "loss, damage or expense caused by or resulting from ... any dishonest or fraudulent acts committed alone or in collusion with others by any proprietor, partner, director, trustee, or elected officer of any organization... engaged by you to provide services in connection with the storage of merchandise." (Id. at Federal_001362-63).)
Additionally, under a section entitled "Notice of Claim," the Policy states, "It is a condition of this insurance that you or your assignee promptly report any loss or damage which may give rise to a claim under this insurance in accordance with the instructions shown on the How to Report a Loss form of this policy." (Id. at Federal_001371.) The "How to Report a Loss" form states, "[i]f an Insured has a loss, please contact us by telephone as soon as possible for further assistance" and provides a telephone number, fax number, mailing address, and email address to which the loss report may be faxed, emailed, or mailed. (Id. at Federal_001296.)
C. The Hancock Adversary Proceeding
On February 2, 2016, Hancock filed a voluntary Chapter 11 bankruptcy petition in the United States Bankruptcy Court for District of Delaware. (Def. 56.1 Stmt. ¶ 21.) When Hancock filed a motion in the Bankruptcy Court seeking leave to conduct store closing sales, Fabrique objected to Hancock's retention of the proceeds from any sales of Fabrique's goods. (Pl. 56.1 Stmt. ¶ 24.) In February 2016, the Bankruptcy *345 Court entered an Order authorizing Hancock "to continue and conduct Store Closing Sales" under certain terms and conditions. (Silverberg Decl., Ex. G ("Store Closing Sale Order"), ECF No. 39-7, at 5 ¶ B(7).) The Order states, in pertinent part:
[N]othing in this Order shall constitute or be construed to be a decision or ruling by this Court on the validity, priority or extent of the putative consignment arrangements as may be asserted by ... [Fabrique] ... or any of [its] right, title or interest in any goods provided by [it] to [Hancock], and all rights and claims asserted by [Fabrique] in the reservation of rights filed with this Court and any defenses thereto by [Hancock] are hereby preserved.
(Def. 56.1 Stmt. ¶ 23 (quoting Store Closing Sale Order at 3 ¶ H).)
Hancock later commenced an adversary proceeding (the "Hancock Adversary Proceeding") against Fabrique seeking, among other things, a declaration that Hancock's interest in the goods was superior to Fabrique's. (Pl. 56.1 Stmt. ¶ 26.) Fabrique answered and counterclaimed, seeking a declaration that the goods were the subject of a bailment (rather than a consignment) and consequential damages from the sale of the goods. (Def. 56.1 Stmt. ¶ 28 (citing Silverberg Decl., Ex. I ("Adv. Pro. Ans."), ECF No. 39-9).) In its counterclaims, Fabrique alleged that "[i]n willful breach of the Agreement, Hancock has sold Goods at prices well below what was agreed to by the parties and without [Fabrique's] consent to such reduced prices." (Adv. Pro. Ans. at 10 ¶ 24.) Fabrique further alleged that "[i]n willful breach of the Agreement, Hancock has sold Goods and retained all proceeds from the sale of such Goods without remitting anything [sic] proceeds to [Fabrique] in accordance with the Agreement." (Id. at 10 ¶ 25.)
In October 2017, Hancock and Fabrique entered into a Settlement Agreement resolving the Hancock Adversary Proceeding. (See Silverberg Decl., Ex. J ("Settlement Order"), ECF No. 39-10, at 1-2.) Under the terms of the Settlement Agreement, Hancock disclaimed liability but agreed to pay Fabrique $250,000, which was to be "allocated proportionally to [Fabrique's] claims for (a) loss of goods valued by [Fabrique] at $1,172,731.00 based on their wholesale price, and (b) lost profits and consequential damages valued by [Fabrique] at $3,000,000." (Id. at Ex. 1 ¶¶ 1, 4.)
D. Fabrique's Insurance Claim
In addition to seeking damages from Hancock for the lost goods, Fabrique also filed a claim for the goods under the Policy. (See Silverberg Decl., Ex. S ("Property Loss Notice"), ECF No. 39-19).) Fabrique contends Federal became aware of Fabrique's loss when Fabrique's CEO, Simon Garfinkel, told Michael Abrams of Lawley Westchester Group, LLC ("Lawley"), Federal's agent, about Hancock's bankruptcy filing in February 2016. (Decl. of Simon Garfinkel dated April 3, 2018 ("Garfinkel Decl."), ECF No. 45, ¶ 2; Pl. Resp. to Def. 56.1 Stmt., ECF No. 47, ¶ 36.[3] ) Fabrique asserts that by March *346 2016, Garfinkel had informed Abrams that Hancock was in possession of Fabrique's goods and was claiming a superior interest in the goods, and that Abrams and Garfinkel had numerous discussions about whether the Policy may provide coverage for the goods. (Id. ¶¶ 2-3.)
The Property Loss Notice prepared by Lawley documenting Fabrique's claim is dated September 6, 2016 and lists the "Date of Loss and Time" as "03/01/2016." (Pl. Resp. to Def. 56.1 Stmt. ¶¶ 36, 39; Property Loss Notice.) In a section entitled "Description of Loss and Damage," the Property Loss Notice states, "Theft of insureds [sic] goods. Please contact insured for additional details." (Property Loss Notice.)
After receiving notice of the claim, Federal assigned Sharon Direso, its Executive Director for Marine Claims, to adjust the claim and a surveyor, Jim Louis, to conduct an investigation. (Pl. 56.1 Stmt. ¶ 42; Bourne Decl., Ex. 10 ("Direso Depo. Tr."), ECF No. 46-11, at 41:7-42:8.) Louis's preliminary report, issued after a several-week investigation, does not mention willful misconduct, fraud, or dishonesty, (Pl. 56.1 Stmt. ¶¶ 46, 50), and Louis later testified that his investigation had not uncovered any evidence of willful misconduct, fraud, or deceit by Hancock or anyone else. (Id. ¶ 51 (citing Bourne Decl., Ex. 11 ("Louis Depo. Tr."), ECF No. 46-12, at 86:15-88:12).)
On November 16, 2016, Federal sent Fabrique a Reservation of Rights Letter (the "ROR Letter"), which reserved Federal's right to deny coverage because "it is not clear if this loss is the result of a 'theft' by Hancock..., or due to a business transaction/relationship that ended because of Hancock's bankruptcy filing." (Pl. 56.1 Stmt. ¶ 53 (quoting Bourne Decl., Ex. 16 ("ROR Letter"), ECF No. 46-17, at Federal_000584).) The ROR letter also states that Federal "reserve[s] all our rights and defenses in regard to this claim under [the Policy]." (ROR Letter at Federal_000583.)
In his response to the ROR Letter, Garfinkel wrote, "It is 100% clear that Hancock ... stole the inventory under the advice of their counsel when they never had title for these goods and paid invoices for approximately $100,000 for goods they sold in their stores. The rest of the goods were stolen." (Def. 56.1 Stmt. ¶ 42 (quoting Silverberg Decl., Ex. U ("Garfinkel Letter"), ECF No. 39-21).)
In an email dated December 28, 2016, Direso informed Fabrique that "our attorney is of the opinion that coverage does not apply in this instance. This is not a theft, nor conversion[,] as we know where the goods are, so they are not truly 'missing or gone.' " (Bourne Decl., Ex. 17, ECF No. 46-18.) However, Direso testified that as of the date of the email, Federal was "not sure we knew the goods were there [in Hancock's possession] a hundred percent." (Direso Depo. Tr. at 197:3-198:5.)
On January 3, 2017, Federal issued a letter (the "Denial Letter") denying Fabrique's insurance claim. (Pl. 56.1 Stmt. ¶ 59 (citing Bourne Decl., Ex. 18 ("Denial Letter"), ECF No. 46-19.) The Denial Letter states, in part:
The available information does not indicate that Hancock converted the [goods]. Rather, Hancock claims a legal right to the [goods], one that is superior to any right in the [goods] held by Fabrique. As such, there has not been 'direct loss or damage' to the [goods], nor has any such loss or damage been fortuitous. Accordingly, there is no coverage available *347 under the Policy based upon current information.
(Denial Letter at Federal_000002.) The Denial Letter further states, "All rights and defenses available to us under the terms of the Policy, at law or otherwise are hereby reserved." (Id. at Federal_000003.) After receiving the Denial Letter, Fabrique commenced this action, alleging that Fabrique "suffered the complete loss of its merchandise through alleged theft" and Federal's denial of coverage breached Federal's obligations under the Policy. (Compl. ¶¶ 2-4.)
Federal argues that Fabrique is not entitled to recover under the Policy because the loss did not result from "direct physical loss or damage" to the goods, the Dishonest Acts and Willful Misconduct Exclusions apply and, even if Fabrique's loss were not otherwise excluded from coverage, Fabrique's failure to provide Federal with timely notice of its claim bars its recovery. (Mem. in Supp. of Mot. for Summ. J. ("Def. Mem."), ECF No. 40, at 13-22.) Fabrique argues that it is entitled to recover because its loss resulted from the physical loss of the goods, neither exclusion applies, and notice was timely (or, in the alternative, that any delay in notice is excused and/or the Policy's notice requirement has been waived). (Pl. Mem. in Opp'n ("Pl. Mem."), ECF No. 49, at 7-25.)
II. LEGAL STANDARDS
Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Gayle v. Gonyea , 313 F.3d 677, 682 (2d Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ). A fact is material when "it 'might affect the outcome of the suit under the governing law.' " Gayle , 313 F.3d at 682 (quoting Anderson , 477 U.S. at 248, 106 S.Ct. 2505 ).
The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. See Marvel Characters, Inc. v. Simon , 310 F.3d 280, 286 (2d Cir. 2002). In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact. To do so, it "must do more than simply show that there is some metaphysical doubt as to the material facts," Caldarola v. Calabrese , 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp. , 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ), and it "may not rely on conclusory allegations or unsubstantiated speculation." Fujitsu Ltd. v. Fed. Express Corp. , 247 F.3d 423, 428 (2d Cir. 2001) (quoting Scotto v. Almenas , 143 F.3d 105, 114 (2d Cir. 1998) ). Rather, the opposing party must produce admissible evidence that supports its pleadings. See First Nat'l Bank of Ariz. v. Cities Serv. Co. , 391 U.S. 253, 289-90, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). In this regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Niagara Mohawk Power Corp. v. Jones Chem., Inc. , 315 F.3d 171, 175 (2d Cir. 2003) (quoting Anderson , 477 U.S. at 252, 106 S.Ct. 2505 ).
In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the opposing party and draw all inferences in that party's favor. See Niagara , 315 F.3d at 175. However, "a court must not weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." Victory v. Pataki , 814 F.3d 47, 59 (2d Cir. 2016) (internal quotation marks and citations omitted). Summary judgment is therefore "improper if there is *348 any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Marvel , 310 F.3d at 286.
III. FABRIQUE HAS STATED A PRIMA FACIE CASE FOR RECOVERY
Under New York law, an "all-risk insured ... has the burden of establishing a prima facie case for recovery" by proving three elements: "(1) the existence of an all-risk policy, (2) an insurable interest in the subject of the insurance contract, and (3) the fortuitous loss of the covered property." Int'l Multifoods Corp. v. Commercial Union Ins. Co. , 309 F.3d 76, 83 (2d Cir. 2002). An all-risk policy is one that allows recovery "for all losses arising from any fortuitous cause, unless the policy contains an express provision excluding the loss from coverage." Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co. , 472 F.3d 33, 41 (2d Cir. 2006). An "insurable interest" is "statutorily define[d] ... to include 'any lawful and substantial economic interest in the safety or preservation of property from loss, destruction or pecuniary damage.' " Zurich Am. Ins. Co. v. ABM Indus., Inc. , 397 F.3d 158, 167 (2d Cir. 2005) (quoting N.Y. Ins. Law § 3401 ) ). "A loss is fortuitous unless it results from an inherent defect, ordinary wear and tear, or intentional misconduct of the insured." Int'l Multifoods , 309 F.3d at 83 (citation omitted).
Here, it is undisputed that the policy provided coverage on an "all risk" basis. (Def. Resp. to Pl. 56.1 Stmt. ¶ 4; see also Dubak Depo. Tr. at 108:18-20.) Federal does not challenge Fabrique's assertion that it had an insurable interest in the goods. (See Pl. Mem. at 8.) Moreover, Direso acknowledged in her testimony that Fabrique had such an interest because, under the Agreement, Fabrique was responsible for insuring the goods and held title to them until they were sold by Hancock. (Direso Depo. Tr. at 169:12-171:19.) However, the parties dispute whether the loss is covered by the Policy. Fabrique argues that its loss is covered because it is a "fortuitous" loss that did not result from "an inherent defect, ordinary wear and tear, or intentional misconduct of the insured." (Pl. Mem. at 8 (quoting Int'l Multifoods , 309 F.3d at 83 ).) Federal contends that Fabrique's loss is not covered by the Policy, because "Hancock's refusal to remit payment for the goods that Fabrique entrusted to Hancock was a risk of doing business" and does not "constitute 'direct physical loss or damage' as required by the Policy." (Def. Mem. at 18.)
Federal's argument is quite similar to one made in another case in this district, Great Northern Insurance Co. v. Dayco Corp. , 620 F.Supp. 346 (S.D.N.Y. 1985). In Dayco , the insured manufactured and shipped goods to foreign trade organizations acting on behalf of the Soviet Union. Id. at 348. Though the goods were shipped to Germany and picked up, the insured never received full payment. Id. at 349. The insurer argued that the loss was not covered because "the policy covers 'direct physical loss to property,' and [the insured's] loss was in the nature of a credit loss due to theft." Id. at 351. The court rejected that argument, finding that the insured "physically lost the goods in that it no longer has control over them and has received no compensation for them." Id. The logic of the court in Dayco applies with equal force here. Regardless of whether the location of the goods was known, Fabrique "physically lost the goods" to the extent that it "no longer has control over them and has received no compensation for them." Id. ; see also Farr Man Coffee Inc. v. Chester , No. 88 Civ. 1692 (DNE), 1993 WL 248799, at *28 (S.D.N.Y. June 28, 1993), aff'd , 19 F.3d 9 (2d Cir. 1994) (rejecting argument that plaintiffs' "loss was not produced by a *349 physical or external cause, but rather the loss resulted from the suppliers' failure to perform under the [c]ontract," and finding the loss "fortuitous" because "plaintiffs did not receive" the product at issue, and "this loss was not caused by either inherent defect, ordinary wear and tear or the intentional misconduct of the plaintiffs").
Fabrique has sufficiently set forth a prima facie case that it sustained a "direct physical loss" of goods, (Policy at Federal_001362), in which it had an insurable interest and that the loss was fortuitous-i.e. , not the result of "an inherent defect, ordinary wear and tear, or intentional misconduct" by Fabrique. Int'l Multifoods , 309 F.3d at 83.
IV. HE WILLFUL MISCONDUCT AND DISHONEST ACT EXCLUSIONS DO NOT APPLY
"Once an insured has met its burden of establishing a prima facie case, the burden shifts to the insurer to establish that an exclusion or exception to coverage applies."[4] Channel Fabrics, Inc. v. Hartford Fire Ins. Co. , No. 11 Civ. 3483 (JPO), 2012 WL 3283484, at *6 (S.D.N.Y. Aug. 13, 2012). An exclusion will apply only if it "is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." U.S. Underwriters Ins. Co. v. 101-19 37th Ave. LLC , 642 F. App'x 10, 11 (2d Cir. 2016) (quoting Cont'l Cas. Co. v. Rapid-Am. Corp. , 80 N.Y.2d 640, 593 N.Y.S.2d 966, 609 N.E.2d 506, 512 (1993) ). "[I]f the language of the policy is doubtful or uncertain in its meaning, any ambiguity must be resolved in favor of the insured and against the insurer." Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co. , 472 F.3d 33, 42 (2d Cir. 2006) (quoting Pepsico, Inc. v. Winterthur Int'l Am. Ins. Co. , 13 A.D.3d 599, 788 N.Y.S.2d 142, 144 (2d Dep't 2004) ).
"Insurance policies are, in essence, creatures of contract, and, accordingly, subject to principles of contract interpretation." Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co. , 650 F. App'x 70, 71 (2d Cir. 2016) (quoting In re Estates of Covert , 97 N.Y.2d 68, 735 N.Y.S.2d 879, 761 N.E.2d 571, 576 (2001) ). "Under New York law, the interpretation of a contract 'is a matter of law for the court to decide.' " Lantheus , 650 F. App'x at 71 (quoting Int'l Multifoods , 309 F.3d at 83 ).
"[W]here the contract's language provides a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion," the contract is not ambiguous. Olin Corp. v. OneBeacon Am. Ins. Co. , 864 F.3d 130, 148 (2d Cir. 2017) (citation and internal quotation marks omitted). "[I]f a court finds that the contract is not ambiguous it should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence and it may then award summary judgment." Fed. Ins. Co. v. Am. Home Assurance Co. , 639 F.3d 557, 567 (2d Cir. 2011) (citation omitted).
"Language in an insurance contract will be deemed ambiguous if reasonable minds could differ as to its meaning." McCarthy v. Am. Int'l Grp., Inc. , 283 F.3d 121, 127 (2d Cir. 2002). "As a general *350 matter, when a contract is ambiguous, its interpretation becomes a question of fact and summary judgment is inappropriate." Mellon Bank, N.A. v. United Bank Corp. , 31 F.3d 113, 116 (2d Cir. 1994). However, "in order for the parties' intent to become an issue of fact..., there must also exist relevant extrinsic evidence of the parties' actual intent." Id. "Ambiguity without the existence of extrinsic evidence of intent presents not an issue of fact, but an issue of law for the court to rule on." Williams & Sons Erectors, Inc. v. S.C. Steel Corp. , 983 F.2d 1176, 1184 (2d Cir. 1993).
Here, neither party argues that the Dishonest Acts and Willful Misconduct Exclusions are ambiguous. Moreover, even if the exclusions were ambiguous, their interpretation does not present a factual question, because neither party has presented extrinsic evidence of the intended meaning of the exclusions. Williams & Sons , 983 F.2d at 1184. As a matter of law, neither exclusion applies.
A The Dishonest Acts Exclusion Does Not Apply
The Dishonest Acts Exclusion provides that the Policy does not cover "loss, damage or expense caused by or resulting from ... any dishonest or fraudulent acts committed alone or in collusion with others by any proprietor, partner, director, trustee, or elected officer of any organization... engaged by you to provide services in connection with the storage of merchandise." (Policy at Federal_001362-63.)
While the Policy does not define the term "dishonest or fraudulent acts," a "dishonest" act is commonly defined as one characterized by a 'lack of truth, honesty, probity or trustworthiness' or 'an inclination to mislead, lie, cheat, or defraud.' " Commercial Union Assur. Co. v. Oak Park Marina, Inc. , 198 F.3d 55, 61 (2d Cir. 1999) (quoting Webster's Third International Dictionary (1961) ).
Federal argues that the "theft of Fabrique's goods, as alleged by Fabrique, is clearly a dishonest act." (Def. Mem. at 15.) However, the allegations that Federal points to in the Property Loss Notice and Fabrique's complaint in this action simply characterize the loss as a "theft." (See Def. Mem. at 14 (quoting Property Loss Notice and Compl. ¶ 2).) Whether an act is "dishonest" depends on the facts of what occurred, not on the labels assigned to it by the parties. Neither the Property Loss Notice nor the complaint provide any facts that explain why the loss was characterized as a "theft." Federal's allegation that "Fabrique's CEO has repeatedly stated that Hancock had 'stolen' its goods" is similarly conclusory.[5] (Def. Mem. at 14-15.)
Although Federal cites to testimony by Garfinkel that provides some details regarding the circumstances of Fabrique's loss, those details do not indicate that Hancock acted dishonestly. Federal cites testimony in which Garfinkel states that Hancock used the "scan base ... when they asked me permission if they could take something.... When they stopped and they kept taking the product they were stealing the product without permission." (Def. Mem. at 15 (quoting Garfinkel *351 Depo. Tr. at 103:6-7, 10-12).) But the fact that Hancock sold the goods without Fabrique's permission does not mean that Hancock acted dishonestly. Garfinkel subsequently testified that his mention of the occasions when Hancock "took the goods without permission" referred to Hancock's conduct "when they filed [for] Chapter 11 [bankruptcy]." (Garfinkel Depo. Tr. at 104:3-6.) It is undisputed that Hancock sought leave of the Bankruptcy Court prior to selling the goods, and that the Bankruptcy Court issued an Order authorizing the sales. (Def. 56.1 Stmt. ¶¶ 21-23.)
Federal asserts that, notwithstanding the Bankruptcy Court's Order, Hancock acted dishonestly because it could not have held a reasonable belief that it had the right to sell Fabrique's goods. (Mem. in Further Supp. of Def.'s Mot. for Summ. J. and in Opp'n to Pl.'s Cross-Mot. for Summ. J. ("Reply"), ECF No. 55, at 8.) To support this assertion, Federal relies on the allegation in Fabrique's complaint that "[i]n the bankruptcy filings, Hancock never listed the merchandise as an asset of Hancock" and "Hancock acknowledged that it: (a) had no ownership interest in the merchandise; and (b) could not borrow against the merchandise because it was not Hancock's asset." (Compl. ¶ 20; see also Reply at 7 & n.29 (citing same).) However, Hancock's acknowledgment that it did not hold an ownership interest in the goods does not establish that Hancock acknowledged or believed it held no interest in the goods. To the contrary, it is undisputed that, in its complaint in the Hancock Adversary Proceeding, Hancock alleged that it held an interest in the goods that was superior to any interest that Fabrique held. (Pl. 56.1 Stmt. ¶ 26.) Although Federal speculates Hancock may not have honestly believed it held such an interest, at the summary judgment stage, a party "may not rely on conclusory allegations or unsubstantiated speculation." Fujitsu , 247 F.3d at 423. Federal has failed to cite any evidence showing that Hancock's belief was not honestly held. Because there is no evidence that Hancock acted dishonestly, the Dishonest Acts Exclusion does not apply.[6]
B. The Willful Misconduct Exclusion Does Not Apply
The Willful Misconduct Exclusion provides that the policy does not cover "loss, damage or expense caused by or resulting from willful misconduct, fraud or deceit by you, your partners, officers or employees ... or willful misconduct, fraud or deceit by other parties involved in the sale or purchase of merchandise[.]" (Policy at Federal_001323.) The Policy does not define "willful misconduct," and neither party has introduced any extrinsic evidence as to the intended meaning of the term. However, in the context of marine insurance contracts, the Second Circuit has interpreted that term to include conduct "measuring up to 'knavery' or 'design.' " Nw. Mut. Life Ins. Co. v. Linard , 498 F.2d 556, 561 (2d Cir. 1974). The term "knavery" is synonymous with dishonesty and fraud.[7] (See Collins English Thesau rus *352 (2016) (listing "dishonesty, fraud, corruption" as synonyms). For the reasons explained above, Hancock's actions were not dishonest. Although Federal asserts that "Hancock's refusal to return the [g]oods is ... a ...fraudulent act," Federal cites no evidence in support of its assertion. (Def. Mem. at 20.) Such a "conclusory allegation" does not raise a triable issue of fact that precludes summary judgment. Fujitsu , 247 F.3d at 423.
Federal's argument that Hancock's actions constitute "willful misconduct" is premised on Fabrique's allegations in the Hancock Adversary Proceeding that Hancock's actions were "in willful breach of the [Scan Based Trading] Agreement." (Def. Mem. at 16-17 (citing Adv. Pro. Ans. ¶¶ 24-25).) However, the New York Court of Appeals has interpreted a similar exclusion for "willful acts" to refer to "conduct which is tortious in nature, i.e. , wrongful conduct in which defendant willfully intends to inflict harm on plaintiff at least in part through the means of breaching the contract between the parties." Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc. , 84 N.Y.2d 430, 618 N.Y.S.2d 882, 643 N.E.2d 504, 509 (1994). In that case, the Court of Appeals found that the requisite intent to harm did not exist because the defendant was "motivated exclusively by its own economic self-interest." Id.
While the Second Circuit has noted that "economic self-interest" may not be an "excuse [for] all manner of misconduct," it has found that an exclusion for "willful misconduct" does not apply where, as here, there is no "triable question of fact as to whether [the defendant's] conduct 'extend[ed] well beyond a simple breach of the [contract].' " Process Am., Inc. v. Cynergy Holdings, LLC , 839 F.3d 125, 140 (2d Cir. 2016) (quoting Banc of Am. Sec. LLC v. Solow Bldg. Co. II, LLC , 47 A.D.3d 239, 847 N.Y.S.2d 49, 56 (App. Div. 1st Dep't 2007) ). There is no evidence that Hancock's sale of Fabrique's goods was motivated by anything other than Hancock's own economic self-interest. Nor is there evidence that Hancock's actions extended "well beyond" a breach of the Scan Based Trading Agreement. Process Am. , 839 F.3d at 140. Thus, the Willful Misconduct Exclusion does not apply.
V. FABRIQUE PROVIDED TIMELY NOTICE TO FEDERAL
In addition to citing the specific exclusions discussed above, Federal contends that Fabrique's "significant delay in making a claim is itself a bar to coverage." (Def. Mem. at 2.) "Under New York law, compliance with a notice-of-occurrence provision in an insurance policy is condition precedent to an insurer's liability under the policy." Pfeffer v. Harleysville Grp., Inc. , 502 F. App'x 28, 31 (2d Cir. 2012) (quoting Sparacino v. Pawtucket Mut. Ins. Co. , 50 F.3d 141, 143 (2d Cir. 1995) ). "A notice obligation is triggered when 'the circumstances known to the insured ... would have suggested to a reasonable person the possibility of a claim.' " Minasian v. IDS Prop. Cas. Ins. Co. , 676 F. App'x 29, 31 (2d Cir. 2017) (quoting Sparacino , 50 F.3d at 143 ) (omission in original). When a notice provision "requires that notice of an occurrence or claim be given promptly" or "requir[es] notice 'as soon as possible,' notice must be given within a reasonable time in view of all of the facts and circumstances."
*353 Cambridge Realty Co., LLC v. St. Paul Fire & Marine Ins. Co. , 421 F. App'x 52, 56 (2d Cir. 2011).
The Policy provides that timely notice is a condition precedent to coverage. (See Policy at Federal_001371 ("It is a condition of this insurance that you ... must report any loss or damage which may give rise to a claim under this insurance in accordance with the instructions shown on the How To Report A Loss form of this Policy").)
The parties dispute when Fabrique became aware that it had suffered a "loss ... which may give rise to a claim" triggering the Policy's notice provision. (Id. ) Federal argues that Fabrique was aware that it had suffered a "loss" on February 2, 2016, when Hancock filed for bankruptcy. (Def. Mem. at 22.) Fabrique contends that even as of March 1, 2016, the date of the loss listed on the Property Loss Notice, "it was far from clear to Fabrique" that it had suffered a loss, and that "when Fabrique was aware that a 'loss' had occurred under the Policy is an unresolved (and perhaps unresolvable) issue of fact." (Pl. Mem. at 25.) However, this Court need not resolve the issue of when the Policy's notice provision was triggered, as the undisputed facts demonstrate that Federal had timely notice of all relevant events.
Because "an insurance broker is ordinarily the agent of the insured, not the insurer, ... notice to the ordinary insurance broker is not notice to the liability carrier. 'Notice to the broker will constitute notice, however, if it is established that the broker was acting as the carrier's agent.' " Fed. Ins. Co. v. Keybank Nat'l Ass'n , 340 F. App'x 5, 7 (2d Cir. 2009) (quoting Bennion v. Allstate Ins. Co. , 284 A.D.2d 924, 727 N.Y.S.2d 222, 224 (App. Div. 4th Dep't 2001) ) (additional internal citations and quotation marks omitted). Here, it is undisputed that Abrams was Federal's agent. (Pl. 56.1 Stmt. ¶ 38; Def. Resp. to Pl. 56.1 Stmt. ¶ 36.)
Garfinkel asserts that "[t]hroughout 2016, starting in February, when Hancock went into bankruptcy, [Garfinkel] continuously updated Mr. Abrams regarding the goods at issue and the developments in the bankruptcy proceedings." (Garfinkel Decl. ¶ 2.) Federal does not dispute Garfinkel's assertion that Abrams received these updates. Thus, regardless of whether the "loss" occurred when Hancock filed for bankruptcy or at some other point during the bankruptcy proceedings, Abrams had timely notice of the relevant events.
Upon receiving notice from Fabrique, under the terms of the Producer Agreement between Lawley and Federal, Abrams was required to report the loss to Federal's office or customer center. (See Bourne Decl., Ex. 20, ECF No. 46-21, at 3 (stating that Lawley's "duties and responsibilities" include, among other things, "report[ing] all losses and claims promptly, and provid[ing] relevant loss and claim information pertaining to coverages placed with us to our nearest Chubb branch office or customer center"). Moreover, Abrams demonstrated his awareness of this responsibility by preparing the Property Loss Notice. (See Property Loss Form (stating that the loss was "Reported By Mike Abrams").) Thus, although the Property Loss Notice was not prepared until September 2016, any delay in reporting the loss to Federal's office is attributable to Abrams, not Fabrique. Because there is no evidence that Fabrique failed to provide timely notice of its loss to the insurer's agent, the Policy's notice provision does not provide a basis to deny Fabrique's claim.[8]
*354 VI. CONCLUSION
Federal's motion for summary judgment, (ECF No. 38), is DENIED. Fabrique's cross-motion for summary judgment, (ECF No. 44), is GRANTED. The Clerk of Court is directed to close the motions accordingly.
SO ORDERED.

The following facts are undisputed unless otherwise indicated.

The Policy defines "merchandise in transit" to include "your business personal property" or "business personal property of others for which you have agreed to provide insurance of the type provided by this [P]olicy," while the property is "being shipped by or consigned to you, or shipped by or consigned to others for your account and ... are intracompany shipments" or "for which you have agreed in writing, prior to loss or damage, to provide insurance of the type provided by this [P]olicy." (Pl. 56.1 Stmt. ¶ 7 (quoting Policy at Federal_001336).) The applicable definition of a "covered peril" is "a peril not otherwise excluded." (Pl. 56.1 Stmt. ¶ 8 (quoting Policy at Federal_001335).)

Federal argues that Garfinkel's declaration should not be considered by this Court on a motion for summary judgment because it is hearsay. (See Reply at 16-17.) But "[h]earsay evidence is admissible at the summary judgment stage if the contents would otherwise be admissible at trial." Century Pac., Inc. v. Hilton Hotels Corp. , 528 F.Supp.2d 206, 215 (S.D.N.Y.2007), aff'd , 354 F. App'x 496 (2d Cir. 2009). Fabrique asserts that Garfinkel will testify at trial, (see Letter from Andrew N. Bourne to this Court dated May 2, 2018, ECF No. 57, at 3), and Garfinkel's testimony as to what he told Abrams would not be hearsay. See Fed. R. Evid. 801(c). Additionally, Garfinkel's testimony that he had discussions with Abrams as to whether the Policy would cover Fabrique's loss, discussed infra , would not be hearsay if it were offered to prove the fact that such discussions occurred, rather than for the truth of the matters discussed. See id.

"In a diversity case such as this one, the choice-of-law rules of New York, the forum state, govern." Alphonse Hotel Corp. v. Tran , 828 F.3d 146, 152 (2d Cir. 2016) (citation omitted). "Under New York choice-of-law rules, 'where the parties agree that [a certain jurisdiction's] law controls, this is sufficient to establish choice of law.' " Id. (quoting Fed. Ins. Co v. Am. Home Assurance Co. , 639 F.3d 557, 566 (2d Cir. 2011) ) (alteration in original). Here, the parties agree that New York law applies. (See Def. Mem. at 10-11 (arguing that New York law should apply); Pl. Mem. at 7-25 (applying New York law).)

Much of Garfinkel's testimony that Federal cites in support of this allegation consists of general, conclusory statements that Hancock committed "theft" or "stole" Fabrique's goods. (See Silverberg Decl., Ex. K ("Garfinkel Depo. Tr."), ECF No. 39-11, at 118:19-20 ("I told Mr. Abrams that my goods were stolen."); id. at 142:16-19 (confirming that Garfinkel believes Hancock's actions were "theft"); id. at 195:6-15 (asserting that Hancock "stole" Fabrique's goods).); see also Def. Mem. at 15 n.58 (citing same).) As noted above, such characterizations do not provide a factual basis to determine whether Hancock's actions were dishonest.

Because Hancock's acts were not "dishonest" within the meaning of the Policy, it is not necessary to address the parties' dispute as to whether those acts were committed "by a proprietor, partner, director, trustee or elected officer" of Hancock. (See Pl. Mem. at 14; Reply at 8-9.)

Both the Willful Misconduct Exclusion and the Dishonest Acts Exclusion are reasonably interpreted as referring to dishonest conduct. However, the Willful Misconduct Exclusion covers, among others, "parties involved in the sale or purchase of merchandise." (Policy at Federal_001323 (emphasis added).) The Dishonest Acts Exclusion covers, among others, parties engaged by the insured "to provide services in connection with the storage of merchandise." (Id. at Federal_001363 (emphasis added).) Thus, the groups covered by each exclusion are conceptually distinct. Because the Willful Misconduct Exclusion can be given a "reasonable meaning consistent with the other parts of the [P]olicy," Mazzaferro v. RLI Ins. Co. , 50 F.3d 137, 140 (2d Cir. 1995), Plaintiff's contention that the Dishonest Acts Exclusion renders the Willful Misconduct Exclusion inoperative is without merit. (See Pl. Mem. at 15-17.)

Moreover, Federal never rejected the claim as being untimely. Such a defense was never raised prior to the filing of this lawsuit.